## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AIEDA  MCCALLUM
2107 Greenery Lane, Apt. 102
Silver Spring, MD 20906-3612

      Plaintiff,

      v.

ARCHSTONE COMMUNITIES, LLC.
9200 E. Panorama Circle
Englewood, CO 80112-3491

      Defendant.

Civil Action No. _____

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Aida T. McCallum brings this Complaint for declaratory and injunctive relief, and for economic, compensatory, and punitive damages, to redress Defendant Archstone Communities, LLC's deprivation of rights secured to Plaintiff by the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §2000(e), *et seq*.  Plaintiff was the victim of pregnancy discrimination in her employment by Archstone Communities, LLC.  Upon learning of Ms. McCallum's pregnancy, Archstone Communities, LLC supervisors Leisa Wolfe and Leticia Taylor began to shun Ms. McCallum and make demeaning remarks about her pregnancy and pregnant appearance.  Just two weeks after learning of Ms. McCallum's pregnancy, Ms. Wolfe terminated Ms. McCallum without warning or credible explanation. Archstone Communities, LLC replaced Ms. McCallum with a non-pregnant employee, and continued to employ less-qualified non-pregnant employees at the time that it terminated Ms. McCallum.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331.

2.      As the unlawful employment practices complained of herein occurred in Laurel,

Maryland, venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.      Plaintiff Aieda T. McCallum (née Hopkins) ("Plaintiff" or "Ms. McCallum") resides at

2107 Greenery Lane, Apartment 102, Silver Spring, MD 20906-3612.  Ms. McCallum was

employed by Defendant between 2007 and 2008 at the Westchester at Cherry Lane ("the

Westchester"), an apartment community located in Laurel, Maryland.

4.      Defendant Archstone Communities, LLC ("Defendant" or "Archstone") owns and

manages residential apartment properties.  Defendant is incorporated in the state of Delaware,

has its corporate headquarters in Colorado, and engages in business in the state of Maryland.

## FACTS

5.      In May 2007, Ms. McCallum began working for Defendant as a Resident Concierge at

the Westchester at Cherry Lane, Defendant's apartment community in Laurel, Maryland.  In

October 2007, Ms. McCallum was promoted to a Leasing Consultant position at the Westchester.

6.      In her position as Leasing Consultant, Ms. McCallum met with potential tenants and

showed them available properties at the Westchester, and coordinated signing leases, preparing

apartments, moving in and other logistics for new tenants.

7.      Ms. McCallum's job performance throughout her employment with Defendant was

excellent.  Ms. McCallum earned a promotion and a raise just five months after she began

working for Defendant, and she received glowing feedback from clients and supervisors.

8.      In early 2008, Defendant assigned a new Property Manager, Leisa Wolfe ("Wolfe), and a new Leasing Supervisor, Leticia Taylor ("Taylor"), to the Westchester.  In their roles as Property Manager and Leasing Supervisor, respectively, Wolfe and Taylor supervised Ms. McCallum and the other Leasing Consultants.

9.      On June 15, 2008, Ms. McCallum informed Wolfe, Taylor, and other coworkers that she was two months pregnant with twins.

10.     Shortly after Ms. McCallum announced her pregnancy, Wolfe and Taylor began to treat Ms. McCallum differently because of her pregnancy.  Prior to learning of her pregnancy, Wolfe and Taylor had praised Ms. McCallum for her work and met with her nearly every morning to check in and plan the work day.  However, immediately upon learning of Ms. McCallum's pregnancy, Wolfe and Taylor began to shun Ms. McCallum, no longer held meetings with her, and refused to assist her with office matters.

11.     Upon learning of Ms. McCallum's pregnancy, Taylor suddenly forbid Ms. McCallum from interacting with visitors to the apartment complex, which was a substantial part of her job. When Ms. McCallum spoke to Taylor about a visitor who had approached Ms. McCallum in the lobby of the Westchester, Taylor told Ms. McCallum that it was not appropriate for Ms. McCallum to speak with visitors now that she was pregnant.

12.     Upon learning of Ms. McCallum's pregnancy, Taylor suddenly began to question Ms. McCallum's ability to do her job.  When Ms. McCallum returned from the typically lengthy task of inspecting several of the Westchester's units, Taylor suggested that the task had been lengthy because Ms. McCallum was pregnant.

13.     Upon learning of Ms. McCallum's pregnancy, Wolfe began smoking in the presence of Ms. McCallum, in blatant disregard for her and her unborn children's health and in direct violation of Archstone Communities' non-smoking policy.

14.     Upon learning of Ms. McCallum's pregnancy, Wolfe began to make clear her distaste for Ms. McCallum's pregnant appearance, and repeatedly made disapproving comments about the fit of Ms. McCallum's clothing.  On June 28, 2008, Wolfe touched Ms. McCallum's stomach without permission and made disapproving comments about the size of her stomach, including admonishing her to "Cover up that baby belly."  Ms. McCallum always wore appropriate attire and a suit jacket that amply covered her stomach and easily buttoned in the front, but she was so humiliated and embarrassed by Wolfe's comments that she purchased an even larger jacket.

15.     On June 30, 2008, two weeks after learning of Ms. McCallum's pregnancy and two days after touching Ms. McCallum's stomach, Wolfe terminated Ms. McCallum without warning.

16.     Defendant's purported reasons for Ms. McCallum's termination are untrue, implausible or did not result in termination for non-pregnant employees.

17.     Defendant replaced Ms. McCallum with a non-pregnant employee, and continued to employ other non-pregnant Leasing Consultants at the same time that it terminated Ms. McCallum.

18.     Defendant's termination of her employment caused Ms. McCallum extreme emotional distress, including feelings of sadness, humiliation, devastation, and failure.  She felt, and continues to feel, depressed and disempowered.

19.     Defendant terminated Ms. McCallum while she was approximately two months pregnant with twins.  Following her termination, which resulted in the loss of her health insurance, Ms. McCallum struggled to pay for health care during and following her pregnancy.

20.     As a result of Defendant's termination of her employment, Ms. McCallum and her family lost their apartment and family vehicle and had to move in with extended family.

## COUNT ONE
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## DISCRIMINATORY TERMINATION BASED ON PREGNANCY

21.     The allegations of each of the foregoing paragraphs are hereby incorporated by reference.

22.     Defendant violated Title VII by terminating Plaintiff on account of her pregnancy.

23.     Defendant is an employer within the meaning of Title VII.

24.     Plaintiff was an employee of Defendant within the meaning of Title VII.

25.     At all relevant times Plaintiff was a member of a class protected by Title VII in that she was pregnant.

26.     Plaintiff suffered an adverse employment action when she was terminated.

27.     Defendant replaced Plaintiff with a non-pregnant employee, and continued to employ other less-qualified non-pregnant employees at the same time that it terminated Plaintiff.

28.     Defendant's purported reasons for Plaintiff's termination were untrue, implausible or did not result in termination for non-pregnant employees.

29.     Defendant acted with reckless disregard for Plaintiff's federally-protected rights.

30.     As a result of Defendant's discriminatory acts, Plaintiff has suffered significant harm for which she should be compensated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendant and:

(a)     Find that the acts and practices complained of herein are in violation of Title VII;

5

(b)     Award Plaintiff compensatory damages in an amount to be shown at trial, including past and future economic and non-economic losses, and compensation for the extreme emotional distress and mental anguish, impairment of quality of life, and consequential losses she has suffered;

(c)     Award Plaintiff all earnings and other job benefits she would have received but for Defendant's discriminatory treatment, including, but not limited to, lost wages, bonuses, and other benefits of employment;

(d)     Issue an injunction ordering Defendant to reinstate Plaintiff to a position Plaintiff would have attained but for Defendant's discriminatory conduct; or, in the alternative, front pay;

(e)     Award Plaintiff punitive damages against Defendant in an amount to be shown at trial;

(f)     Award pre-judgment and post-judgment interest;

(g)     Award Plaintiff her attorneys' fees and costs of suit; and

(h)     Grant such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

_____/s/_____

Richard Salzman (D.Md. No. 15840)
HELLER, HURON, CHERTKOF & SALZMAN
1730 M Street, N.W., Suite 412
Washington, D.C. 20036
Phone: (202) 293-8090
Fax: (202) 293-7110
Email: ras@hellerhuron.com

_____/s/_____

Emily B. Read (D.Md. No. 17700)

WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS &
URBAN AFFAIRS
11 Dupont Circle, NW, Suite 400
Washington, DC 20036
Phone: (202) 319-1000
Fax:    (202) 319-1010
Email:  emily_read@washlaw.org

*ATTORNEYS FOR PLAINTIFF*
*AIEDA MCCALLUM*

Dated: May 22, 2012